# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

---

THOMAS A. RUSSELL, M.D.,
PATRICK BURKE,
GERARD INSLEY,
AMANDA KIELY,
PAUL BURKE,                           **Docket No.:   2:20-cv-02135**
THOMAS MADDEN, and
AIDEEN JENNINGS,                      **JURY DEMANDED**

       **Plaintiffs,**

v.

ZIMMER, INC.,

       **Defendant.**

---

## COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES FOR FRAUDULENT INDUCEMENT, BREACH OF CONTRACT, BREACH OF IMPLIED DUTY TO ACT IN GOOD FAITH, AND REQUEST FOR DECLARATORY RELIEF

---

**COME NOW** Plaintiffs Thomas A. Russell, M.D., Patrick Burke, Gerard Insley, Amanda Kiely, Paul Burke, Thomas Madden, and Aideen Jennings, by and through counsel, seeking compensatory and punitive damages and declaratory relief related to Defendant Zimmer, Inc.'s fraudulent inducement, breach of contract, and breach of implied duty to act in good faith.  In support of this Complaint, Plaintiffs show the Court as follows:

## PARTIES

1.    Plaintiff Thomas A. Russell, M.D. ("Dr. Russell") is a citizen and resident of the State of Tennessee.

2.    Plaintiff Patrick Burke is a citizen and resident of Limerick, Ireland.

3.    Plaintiff Gerard Insley is a citizen and resident of Limerick, Ireland.

4. Plaintiff Amanda Kiely is a citizen and resident of Limerick, Ireland.

5. Plaintiff Paul Burke is a citizen and resident of Limerick, Ireland.

6. Plaintiff Thomas Madden is a citizen and resident of Tipperary, Ireland

7. Plaintiff Aideen Jennings is a citizen and resident of Clare, Ireland.

8. Plaintiffs are former shareholders of CelgenTek Innovations Corporation, which was acquired by Defendant Zimmer, Inc. ("Zimmer") on September 27, 2016.

9. Zimmer is a Delaware corporation, with its principal place of business at 345 E. Main Street, Warsaw, Indiana, 46580.

10. Zimmer may be served through its registered agent, Corporation Service Company, 135 North Pennsylvania Street, Suite 1610, Indianapolis, IN 46204.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 (diversity of citizenship), because the matter in controversy exceeds the sum of $75,000 exclusive of interest and costs and is between citizens of different states.

12. Venue in this Court is proper pursuant to 28 U.S.C. § 1391 and 18 U.S.C. § 1965(a) because Zimmer does business in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTS

13. CelgenTek Innovations Corporation ("CIC") is the creator and designer of the N-Force Fixation System®.

14. The N-Force Fixation System is designed for the fixation of bone fractures and bone reconstructions, and it allows healthcare professionals to directly administer bone substitute

materials and bone cement directly into the bone through a fenestrated screw in a single integrated construct.

15.     In 2014 Zimmer and its employees approached CIC shareholders through Dr. Russell about potential business arrangements regarding CIC's N-Force technology (including various hardware and screws) and iN3 calcium phosphate cements (collectively, the "Distribution Agreement Products").

16.     On October 7, 2015, CIC and Zimmer entered into an Exclusive Distribution Agreement, whereby Zimmer became the sole distributor worldwide of CIC's Distribution Agreement Products in the field of orthopedic and bone repair and regeneration applications.

**See Exclusive Distribution Agreement.  Defendant possesses this document.**

17.     According to the terms of the Exclusive Distribution Agreement, Zimmer committed to make "commercially reasonable efforts" to promote, commercialize, and sell the Exclusive Distribution Agreement Products and to place purchase orders with CIC for all required inventory.

*See id.*, section 2.1.

18.     On November 20, 2015, Zimmer acquired Twenty-Six Thousand, Six Hundred Sixty-Seven (26,667) shares of Series A Preferred Stock in CIC.

19.     This transaction ("2015 Stock Purchase Agreement") transferred ten percent (10%) equity ownership of CIC to Zimmer.

20.     Thereafter, Zimmer began negotiations to acquire the remainder of Plaintiffs' stock in CIC.

21.     Zimmer (through one of its affiliates, Zimmer Biomet Holdings, Inc.) and CIC initially discussed a closing payment of Thirty Million Dollars ($30,000,000.00), with no additional royalty payments, earnout payments, or contingent payments.

*See* **Letter of Intent dated April 26, 2016.  Defendant possesses this document.**

22.     During further negotiations, Zimmer suggested that the earnout payments be changed from payments based on EBITDA targets to payments based on a percentage of net sales of the "Earnout Products" as defined in the Purchase Agreement.  The Earnout Products included the Exclusive Distribution Agreement Products and other CIC products.

23.     Plaintiffs (as selling shareholders), Dr. Russell (as the shareholder representative), and CIC entered into a Stock Purchase Agreement dated September 27, 2016 ("2016 Stock Purchase Agreement" or "Agreement").

*See* **2016 Stock Purchase Agreement.   Defendant possesses this document.**

24.     The 2016 Stock Purchase Agreement resulted in an Estimated Purchase Price of Seventeen Million, One-Hundred Eighteen Thousand, Five-Hundred and Sixty Dollars ($17,118,560.00) and provided for additional "Contingent Consideration" consisting of a percentage of net sales.

25.     Two Million, Three Hundred Thirty-Five Thousand, Three Hundred Twenty Dollars ($2,335,320.00) of the purchase price was to repay Zimmer loans made to CIC for lack of inventory orders by Zimmer under the terms of the Exclusive Distribution Agreement, which in turn reduced shareholder proceeds from the 2016 Stock Purchase Agreement.

26.     Pursuant to the 2016 Stock Purchase Agreement, Zimmer was required to use "commercially reasonable efforts" to sell the Earnout Products during the "Earnout Period" from January 1, 2017 through December 31, 2033.

*See id.*, Section 2.05, pp. 18–21.

27.     Instead of honoring this provision, Zimmer discontinued the distribution of the Earnout Products outside the United States, including all European sales, marketing, and research related to the Earnout Products.

28.     Furthermore, Zimmer cancelled CIC's vendor contracts, terminated key employees, and failed to renew European Union regulatory clearances on CIC's Products.  These actions make it virtually impossible to restart Products sales.

29.     Contingent Consideration payments should have totaled millions of dollars. Instead, actual Contingent Consideration payments in 2018-2019 totaled only approximately One Hundred Twenty-Five Thousand Dollars ($125,000.00).

30.     During the negotiations leading up to the execution of the 2016 Stock Purchase Agreement, Zimmer never intended to use "commercially reasonable efforts" to market and sell the Earnout Products during the Earnout Period, and Zimmer's actions after the execution of the Agreement further demonstrate that it deliberately misled Dr. Russell and the other CIC shareholders to enter into the Agreement.

31.     Specifically, Zimmer:

    (a)     Failed to retain the members of the commercial team involved in market development in Europe;

    (b)     Sent a field notification to customers stating that the product supply was to be terminated based on "strictly a business decision;"

    (c)     Terminated the clinical trial at the Leeds General Infirmary;

    (d)     Allowed the CE Mark regulatory approval for iN3 Cement to expire;

    (e)     Allowed the CE Mark for the N-Force technology to expire;

    (f)     Terminated key individuals who were involved with and were knowledgeable about the product;

(g)   Ceased N-Force product manufacturing activity at the Memphis facility;

(h)   Terminated the Supply and Distribution Agreement with Innotere for the iN3 Cement;

(i)   Failed to meet customer orders for the product in Europe;

(j)   Removed instrumentation sets for N-Force application from customer locations;

(k)   Failed to commercialize the product in Australia despite the fact that the product was registered and granted reimbursement status in Australia in 2016.  Further, despite multiple staff training and registration fees, no product was ever shipped;

(l)   Failed to bolster new European sales with new CelgenTek Ltd. customers, despite multiple product training sessions;

(m)   Failed to schedule promised leadership team meetings to discuss developments with the N-Force system and the iN3 cement; and

(n)   Terminated meaningful communication with Plaintiffs regarding the Earnout Products.

32.   Based on the foregoing acts and omissions, Zimmer fraudulently induced Plaintiffs to enter into the Stock Purchase Agreement and agree to the "Contingent Consideration."

33.   Plaintiffs have suffered economic damages as a result of this reliance in an amount not less than Twelve Million, Eight-Hundred Eighty-one Thousand, Four Hundred Forty Dollars ($12,881,440.00).

## CLAIMS FOR RELIEF

### COUNT I:
### FRAUDULENT INDUCEMENT

Plaintiffs incorporate by reference paragraphs 1–33 above, as if restated verbatim herein, and allege as follows:

34.     Zimmer made false statements to Plaintiffs concerning its intent to use "commercially reasonable efforts" to sell the Earnout Products during the "Earnout Period," from January 1, 2017 through December 31, 2033.

35.     These statements were material to induce the transaction, as they formed the basis of Plaintiffs' acceptance of the revised terms of the 2016 Stock Purchase Agreement.

36.     When it entered into the 2016 Stock Purchase Agreement, Zimmer had no intent to use "commercially reasonable efforts" to sell the Earnout Products during the "Earnout Period" and, indeed, it did not use "commercially reasonable efforts" to sell the Earnout Products.

37.     Zimmer intended to induce Plaintiffs' reliance on the false statement from the moment it suggested compensation related to Earnout Products sales during the "Earnout Period."

38.     Plaintiffs reasonably relied on the terms of the 2016 Stock Purchase Agreement, and Zimmer's promise to use "commercially reasonable efforts" to sell the Earnout Products during the "Earnout Period."

39.     Plaintiffs were – and continue to be – injured as a result of this reliance in an amount to be determined by this Court, but no less than the difference between the original thirty million dollars ($30,000,000.00) stated in the April 26, 2016, Letter of Intent and the Seventeen Million, One-Hundred Eighteen Thousand, Five-Hundred and Sixty Dollars ($17,118,560.00) actually paid — which amounts to Twelve Million, Eight-Hundred Eighty-One Thousand, Four Hundred Forty Dollars ($12,881,440.00).

40.     Given the foregoing, Zimmer's actions are *prima facie* evidence of fraudulent inducement – especially in light of the fact that Zimmer discontinued the distribution of CIC's Products outside the United States, as well as halted all European sales, marketing, and research related to the Products, as of December 31, 2019.

*See, e.g., Lamb v. MegaFlight, Inc.*, 26 S.W.3d 627, 630-31 (Tenn. Ct. App. 2000) (noting the elements of fraudulent inducement in Tennessee).

41.     Had Zimmer honestly relayed its intent to "mothball" the Earnout Products, Plaintiffs would not have entered into the 2016 Stock Purchase Agreement.

42.     Zimmer intended to induce Plaintiffs' reliance on Zimmer's false statements by grossly overstating the amount of the Contingent Consideration that would flow during the "Earnout Period."

43.     Zimmer knew that Plaintiffs would not have agreed to reduce the initial closing payment from Thirty Million Dollars ($30,000,000.00) to Seventeen Million, One-Hundred Eighteen Thousand, Five-Hundred and Sixty Dollars ($17,118,560.00) without Zimmer's fraudulent inducement regarding the expected Contingent Consideration.

44.     Zimmer and its employees and agents were acting within the course and scope of their employment in their communications and negotiations with Plaintiffs concerning the Exclusive Distribution Agreement, the 2015 Stock Purchase Agreement, the April 26, 2016, Letter of Intent, the 2016 Stock Purchase Agreement, and all associated and subsequent communications and representations.

45.     Plaintiffs reasonably relied upon Zimmer's material misrepresentations to their detriment by transferring their stock in CIC to Zimmer pursuant to the revised terms proposed by Zimmer.

46.     Zimmer's material misrepresentations injured Plaintiffs in an amount not less than Twelve Million, Eight-Hundred Eighty-one Thousand, Four Hundred Forty Dollars ($12,881,440.00), which is the difference between the original Thirty Million Dollars ($30,000,000.00) stated in the April 26, 2016, Letter of Intent and the Seventeen Million, One-

Hundred Eighteen Thousand, Five-Hundred and Sixty Dollars ($17,118,560.00) provided in the 2016 Stock Purchase Agreement.

47.     Further, Plaintiffs are entitled to punitive damages as a result of Zimmer's fraudulent inducement in an amount to be determined at trial, but no less than treble damages: Thirty-Eight Million Six-Hundred Forty-Four Thousand, Three-Hundred Twenty Dollars ($38,644,320.00).

## COUNT II:
## BREACH OF CONTRACT

Plaintiffs repeat and re-allege the allegations of paragraphs 1–47 above, and hereby incorporate them by reference as if stated verbatim herein.

48.     Zimmer and Plaintiffs entered into an enforceable 2016 Stock Purchase Agreement.

49.      Zimmer breached this contract with Plaintiffs by failing to use "commercially reasonable efforts" to sell the Products during the "Earnout Period," from January 1, 2017, through December 31, 2033.

50.     Plaintiffs have suffered damages in an amount to be determined at trial as a result of Zimmer's breach of the 2016 Stock Purchase Agreement, but in no event are Plaintiffs' compensatory damages less than Twelve Million, Eight-Hundred Eighty-One Thousand, Four Hundred Forty Dollars ($12,881,440.00).

## COUNT III:
## BREACH OF IMPLIED DUTY TO ACT IN GOOD FAITH

Plaintiffs repeat and re-allege the allegations of paragraphs 1–50 above, and hereby incorporate them by reference as if stated verbatim herein.

51.     Under the covenant of good faith and fair dealing, each party to a contract impliedly promises that it will not intentionally or purposely do anything that will destroy or injure the other party's right to receive the fruits of the agreement.

52.     Zimmer – by refusing to use "commercially reasonable efforts" to sell the Products during the "Earnout Period" from January 1, 2017, through December 31, 2033, and by terminating the distribution of CIC's Products outside the United States as well as halting all European sales, marketing, and research as of December 31, 2019 – has breached the implied covenant of good faith and fair dealing.

53.     Zimmer's breach of the implied covenant of good faith and fair dealing has caused and is continuing to cause damage to Plaintiffs in an amount to be proven at trial, but such amount will exceed Seventy-five Thousand Dollars ($75,000.00), exclusive of interest and costs.

## COUNT IV:
## DECLARATORY RELIEF

Plaintiffs repeat and re-allege the allegations of paragraphs 1–53 above, and hereby incorporate them by reference.

54.     As evidenced by the allegations set forth in the above paragraphs, a substantial controversy exists between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment that Zimmer is in breach of the 2016 Stock Purchase Agreement.

55.     A judgment declaring the rights of the parties with respect to the matter in controversy will serve a useful purpose in clarifying and settling the legal relationship at issue and will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to this lawsuit.

56.     Pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, Plaintiffs seek a declaratory judgment finding Zimmer in breach of the 2016 Stock Purchase Agreement.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs request that judgment be rendered as follows:

1.      That process issue and be served upon Zimmer requiring it to answer this Complaint;

2.      That Zimmer be found to have fraudulently induced Plaintiffs to enter the 2016 Stock Purchase Agreement;

3.      That Zimmer be found to be in breach of the 2016 Stock Purchase Agreement;

4.      That Zimmer be found to have breached the implied covenant of good faith and fair dealing with respect to the 2016 Stock Purchase Agreement;

5.      That Plaintiffs be awarded compensatory damages against Zimmer in an amount to be determined at trial, but no less than Twelve Million, Eight-Hundred Eighty-one Thousand, Four Hundred Forty Dollars ($12,881,440.00) as a result of Zimmer's negligent and intentional acts;

6.      That Plaintiffs be awarded their respective costs and reasonable attorneys' fees as they may be entitled under the facts and circumstances of this cause and as provided in the contract;

7.      That Plaintiffs be awarded punitive damages in an amount to be determined by the Court, but in an amount no less than Thirty-Eight Million Six-Hundred Forty-Four Thousand, Three-Hundred Twenty Dollars ($38,644,320.00) as a result of the fraudulent conduct of Zimmer; and

8.      That Plaintiffs be awarded pre-judgment and post-judgment interest and such other general or equitable relief and damages to which they may be entitled.

Respectfully submitted,

*s/ Philip E. Mischke*
Philip E. Mischke (BPR # 10063)
Robert F. Miller (BPR # 7797)
Richard D. Underwood (BPR # 14515)
Justin E. Mitchell (BPR # 25578)
**FARRIS BOBANGO PLC**
999 S. Shady Grove Road, Suite 500
Memphis, Tennessee 38120
Telephone:   (901) 259-7100
pmischke@farris-law.com
rmiller@farris-law.com
runderwood@farris-law.com
jmitchell@farris-law.com
*Attorneys for Plaintiffs*